IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| KEVIN LONG, *et al.* | * | |
| Plaintiffs, | * | |
| | * | Civil Action No.: RDB-10-2776 |
| v. | * | |
| McMULLEN, DRURY & PINDER, P.A., | * | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

On October 7, 2010, Laure and Kevin Long (the "Longs" or "Plaintiffs") filed this lawsuit alleging that Defendant McMullen, Drury & Pinder, P.A. ("Defendant") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") in its efforts to collect a debt arising from outstanding assessments owed by the Longs to the Monmouth Meadows Homeowner's Association. Specifically, the Longs' Complaint is based on a single debt collection letter sent by Defendant that Plaintiffs claim violated the FDCPA by, *inter alia*, using false or deceptive means in connection with the collection of the debt, and by falsely representing the amount of the debt. Presently pending before this Court is Defendant's Motion for Summary Judgment (ECF No. 8), and Plaintiffs' Motion for Leave to File a First Amended Complaint (ECF No. 14). This Court has reviewed the record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Plaintiffs' Motion for Leave to File a First Amended Complaint is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

## BACKGROUND

This is not the first Fair Debt Collection Practices Act action that the Kevin Long has filed against the Defendant McMullen, Drury & Pinder P.A.   On June 4, 2010, approximately four months prior to instituting this lawsuit, he filed a three count complaint in this Court alleging three causes of action arising under the FDCPA and Maryland common law.  The complaint in that action alleged that "[t]he Defendants'[1] conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Compl. ¶ 17, Civil Action No. JFM-10-1451, ECF No. 1.  Moreover, Mr. Long alleged that that the Defendants "hounded the Plaintiff" by making repeated and persistent telephone calls in connection with the debt collection.  *Id.* ¶ 29.  In response, the Defendant filed a motion for summary judgment arguing in large part that it in no way engaged in any harassment, and made no telephone calls to Mr. Long.  *See* Civil Action No. JFM-10-1451, ECF No. 3-1.  Shortly thereafter, Mr. Long dismissed the case without prejudice.  *See id.*, ECF No. 4.

After retaining new counsel, Mr. Long and his wife brought this action against Defendant asserting a single count arising under the FDCPA.  In contrast to the original action, the Longs have significantly tempered their allegations against the Defendant.  The present Complaint contains no allegation of outrageous conduct, and makes no mention of harassing telephone calls.  Instead, the Longs have based their complaint on a single debt

---

[1]   In the prior case, Mr. Long sued not only the Defendant law firm, but also ten unnamed john does.

collection letter sent by the Defendant to collect delinquent homowner's association fees. While the present Complaint contains only one count, it nonetheless asserts a number of alleged violations of the FDCPA by the Defendant.  Specifically, Plaintiffs claim that the Defendant violated the FDCPA by: (1) using false, deceptive, or misleading means in connection with the collection of the alleged debt in violation of 15 U.S.C. § 1692e(10); (2) participating in collection activities that overshadowed or were inconsistent with the Plaintiffs' right to dispute the debt in violation of 15 U.S.C. § 1692g(b); (3) falsely representing the amount of the alleged debt in violation of 15 U.S.C. § 1692e(2)(A); and (4) generally failing to comply with the FDCPA.[2]  Compl. ¶ 12, ECF No. 1.

Plaintiffs reside in the Monmouth Meadows residential community in Abingdon, Maryland.  Under the by-laws of the Monmouth Meadows community, residents are obligated to pay certain homeowner's association dues and fees.  Monmouth Meadows is a client of Defendant law firm, and periodically retains Defendant's to collect outstanding payments owed by the residents.  In March of 2010, a representative of Monmouth Meadows contacted Mr. Richard Drury, a shareholder in Defendant law firm, to notify him that the Longs had a past due balance that Monmouth wished to collect.  In this regard, Monmouth provided Mr. Drury with certain documents, including an account statement and a collection letter that had been previously sent to the Longs.  The documents provided by Monmouth indicate that the amount owed through March 1, 2010 was $130.70.  *See*

---

[2]  In their Complaint, the Plaintiffs argue that the Defendant failed to provide sufficient notice of Plaintiffs' rights in violation of 15 U.S.C. § 1692g(a).  However, in their opposition to Defendant's Motion for Summary Judgment, the Plaintiffs abandon this claim.  *See* Pls.' Opp'n at 18, ECF No. 13.  Accordingly, this Court will not address this allegation.

Monmouth Records, ECF No. 8-5.[3]   In his affidavit, however, Mr. Drury states that

Monmouth advised him that the amount outstanding, including late fees and assessments

through the month of April was $171.60.   Drury Aff. ¶¶ 8-9, ECF No. 8-2.   Thereafter, on

March 30, 2010, Mr. Drury sent a debt collection letter (the "March 30 Letter") to the Longs

seeking collection of $471.60, which included collection and expense fees in the amount of

$300.   *See* March 30 Letter, ECF No. 1-1.   In pertinent part, the March 30 Letter stated:

> 1.   Pursuant to the By-Laws of the Association, you, as a unit owner, are
> obligated to remit monthly installments of $20.90, plus late fees, as payment of
> your percentage share of common expenses of the Association.   The
> Association's records indicate that you have failed to remit payment to date.
> The <u>amount presently due</u> is $471.60, which also includes collection fees and
> expense fees of $300.00.   If payment is received within thirty (30) days, from
> the date of this letter, no further legal action will be taken against you and your
> unit.
>
> 2.   Unless payment in the amount of $471.60 is received within thirty (30) days
> from the date of this letter, the Association intends to create and record a lien
> against your property.   Attached hereto is a Notice of Intention to Create
> Lien, containing a summary of the amounts which will be claimed, and your
> rights as an owner.   Also attached is a notice of your rights pursuant to the
> Fair Debt Collection Practices Act.

*Id.* (emphasis in original).   In addition to the Notice of Intention to Create Lien, the March

30 Letter contained a full page Notice of rights under the FDCPA that appears to be a

verbatim recitation of the validation of debts provision in the FDCPA.   *Id.*; *see also* 15 U.S.C.

§ 1692g.

---

[3]   Plaintiffs argue that the records provided to Mr. Drury by Monmouth are inadmissible hearsay.
Plaintiffs are incorrect.   It is clear that the documents submitted as attachments to Defendant's
Motion for Summary Judgment are not being offered for the truth of the matter asserted—*i.e.*, that
the documents themselves reflect the amount owed by the Plaintiffs.   *See* Fed. R. Evid. 801(c), 802.
Rather, they are offered to place Mr. Drury's review of those documents into context and to show
Mr. Drury's knowledge, intent, lack of mistake, and notice.

4

On April 1, 2010, apparently without yet receiving Mr. Drury's March 30 Letter, the Longs made an electronic payment to Monmouth Meadows in the amount of $130.70. On April 12, 2010, the Longs made another electronic payment to Monmouth in the amount of $20.90. On April 24, 2010, Mr. Drury received a letter from the Longs in which they acknowledged their validation rights under the FDCPA and disputed the amount owed. Mr. Drury received confirmation from Monmouth that it considered the matter closed, and on April 28, 2010, Mr. Drury sent a letter to the Longs in which he advised them that he had closed the Longs' file in his office, apparently foregoing the $300 collection and expense fees. No other collection activity occurred.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent

factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 because Plaintiffs' claims constitute a federal question arising under the FDCPA.

## I. The Fair Debt Collection Practices Act

The FDCPA safeguards consumers from abusive and deceptive debt collection practices by debt collectors. *Spencer v. Hendersen–Webb, Inc.*, 81 F. Supp. 2d 582, 590 (D. Md. 1999) (*citing United States v. Nat'l Fin. Servs. Inc.*, 98 F.3d 131, 135 (4th Cir. 1996)). The FDCPA covers debt collectors who "regularly collect or attempt to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due another." *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (*quoting* 15 U.S.C. § 1692a(6)). It is undisputed that Defendant is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

It is well established that "the threshold requirement for application of the [FDCPA] is that prohibited practices are used in attempt to collect debt." *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87–88 (4th Cir. 1994). The FDCPA prohibits "the false representation of . . . the character, amount, or legal status of any debt" and "the use of any false

representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(2)(A); 15 U.S.C. § 1692e(10).  The FDCPA is a strict liability statute and a consumer only has to prove one violation to trigger liability.  *Spencer*, 81 F. Supp. 2d at 590–91.

The United States Court of Appeals for the Fourth Circuit has held, that in the context of the FDCPA, the language of debt collection letters alleged to be violative of the statute must be evaluated from the perspective of the "least sophisticated debtor."  *Nat'l Fin. Servs. Inc.*, 98 F.3d at 135-36.  While the least sophisticated debtor standard seeks to protect naïve consumers, it also "prevents liability for bizarre or idiosyncratic interpretations of the collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."  *Id.* at 136 (citation omitted).

In paragraphs eight and nine of their Complaint, the Longs allege that the March 30 Letter made "misleading and conflicting statements regarding the date upon which payment of the alleged debt was due," and that the letter overshadowed and was inconsistent with the Plaintiff's rights under the FDCPA.  Compl. ¶¶ 8-9.  Essentially, the Plaintiffs contend that by requesting payment within thirty days of the *date* of the letter, Defendant violated the FDCPA insofar as the validation of debts provision in the FDCPA requires a statement that unless the consumer disputes the validity of the debt within thirty days of *receipt* of the letter, the debt will be assumed to be valid by the debt collector.  *See* 15 U.S.C. § 1692g.  In support of their argument, the Plaintiffs cite *Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F. Supp. 1148 (E.D.N.Y. 1996).  The Plaintiffs' reliance on that case is misplaced.  In *Cavallaro*, the Defendant's debt collection letter incorrectly summarized the plaintiff's validation rights by

stating that the plaintiff should dispute the debt "within thirty (30) days from the date of this notice rather than, as mandatorily required by the statute, within 30 days of receipt of the notice." *Id.* at 1154 (citing 15 U.S.C. § 1692g(a)(3)) (internal quotation marks omitted). The court held that notwithstanding the minor deviation from the statutory text, the incorrect statement of the plaintiff's rights was nevertheless a violation of the FDCPA. *Id.*; *but see Stojanovski v. Strobl & Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992) (construing exact same claim and holding that "such an insignificant variation from the statutory language" cannot constitute an abusive debt collection practice).

Here, however, the Plaintiffs acknowledge that "[t]he 'Notice' pages which were included with the Defendant's March 30, 2010 letter *correctly* advised Plaintiffs of this specific time period and cited the relevant portions of the FDCPA." Pls.' Opp'n at 8, ECF No. 13 (emphasis added). Therefore, contrary to the situation in *Cavallaro*, the Defendant here did not provide the Plaintiffs with an incorrect notice of their validation rights—indeed, it reproduced verbatim the precise language used in the statute, and clearly advised the Plaintiffs that they had the right to dispute the debt within thirty days of the *receipt* of the March 30 Letter. Accordingly, there is simply no evidence that the Defendant engaged in any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Moreover, in keeping with the Fourth Circuit's guidance, this interpretation "preserv[es] a quotient of reasonableness and presume[es] a basic level of understanding and willingness to read with care" on the part of the Plaintiffs. *Nat'l Fin. Servs. Inc.*, 98 F.3d at 136. Summary judgment is, therefore, granted against Plaintiffs on their claims arising under 15 U.S.C. §§ 1692e and 1692g.

The Plaintiffs also argue the amount stated in the March 30 Letter was inaccurate and, therefore, false and misleading under 15 U.S.C. § 1692e(2)(A).  Although the Plaintiffs repeatedly refer to the amount owed as "$103.70," *see* Pls.' Opp'n at 2, 10, it appears as though this contention is the result of a typographical error, and that the Plaintiffs actually contend the amount owed was $130.70.  *See id.* at 10, 11, 18, and 21.  Plaintiffs argue that it is "impossible to determine how Defendant ever arrived at $171.60 as the amount it was attempting to collect from Plaintiffs."  *Id.* at 19.  Plaintiffs argue that because Monmouth Meadows accepted their payments of $130.70 and $20.90 ($151.60 total) as full and complete payment, the Defendant incorrectly asserted the amount due.

The Defendant first argues that the March 30 Letter, which included an attached account statement, "fully and accurately depicted the debt owed by Plaintiffs."  Def.'s Mot. Summ. J. at 14.  However, apparently recognizing the fact that there is indeed a discrepancy between the amount it asserted was owed and the amount accepted by Monmouth Meadows, Defendant also argues that it is not liable insofar as it is protected from liability through the FDCPA's bona fide error defense.  Specifically, Defendant argues that it relied on the information provided to it by its client and honestly believed that that information was accurate.  On the facts presented, this Court concludes that Defendant is entitled to take shelter in affirmative defense of bona fide error.

Under the FDCPA, a debt collector is shielded from liability under the Act upon a showing, by a preponderance of the evidence, that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c); *Jerman v. Carlisle, McNellie, Rini,*

*Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1609 (2010).  While the bona fide error defense "does not apply to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA," this Court has recognized that it may be asserted "in circumstances where a violation of the FDCPA results from other causes, such as a clerical or factual mistake." *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 731 (D. Md. 2011) (citing *Jerman*, 130 S. Ct. at 1608).  Moreover, as this Court recently stated:

> The FDCPA does not require a debt collector to engage in an independent investigation of the debt referred for collection.  *See Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir. 1997) (holding that a debt collector has no obligation to conduct an independent debt validity investigation); *Elane v. Revenue Maximization Group*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002) (noting that defendant was entitled to rely on its client's representation that the debt was valid); *see also Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1140-41 (N.D. Ill. 1998); *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996).  Moreover, a misrepresentation made by the debt collector solely as a result of inaccurate information provided by its client would be a bona fide error as defined under 15 U.S.C. § 1692k(c).  *See Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (holding the defendant reasonably relied on its client's calculation of the debt owed, and that the resulting misrepresentation in a subsequent communication was a bona fide error pursuant to 15 U.S.C. § 1692k(c)).

*Sayyed v. Wolpoff & Abramson, LLC*, 733 F. Supp. 2d 635, 646 (D. Md. 2010); *see also Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 235 (4th Cir. 2007) (noting that a debt collector's "reliance on its client" is a relevant inquiry when construing the bona fide error defense).

Here, it is clear that the bona fide error defense bars Plaintiff's claims arising out of any slight discrepancy between the actual amount owed by the Plaintiffs and the amount quoted by Mr. Drury in the March 30 Letter.  In his sworn affidavit, Mr. Drury sets forth the procedures he undertook in drafting the March 30 Letter and ascertaining the amount due by the Plaintiffs.  He states that during his consultation with Monmouth Meadows, he was

advised that the Longs owed $171.60, that he reviewed prior correspondence between Monmouth and the Longs, and that he reviewed an account statement and Maryland State Department of Assessments and Taxation documents in order to determine the correct amount of the debt.  Drury Aff. ¶¶ 8-9.  As previously noted, Defendant was not required to undertake an independent investigation of the debt referred for collection, and summary judgment is therefore granted against the Plaintiffs on their claims alleging that Defendants falsely represented the amount of the debt.

Finally, the Plaintiffs argue that by "acting in an otherwise deceptive, unfair and unconscionable manner," Defendant failed to comply with the FDCPA.  Compl. ¶ 12.e.  While sections of the FDCPA do contain general prohibitions against using unfair, unconscionable, false, deceptive, or misleading means in connection with debt collection, *see* 15 U.S.C. §§ 1692e-f, the Plaintiffs have completely failed to allege which of their asserted facts would support such allegations.  In a similar situation, this Court has stated that it "will not engage in speculation and conjecture to determine which facts are applicable to Plaintiffs' claims."  *Mateti v. Activus Fin., LLC*, No. DKC-08-540, 2009 WL 2507423, at *10 (D. Md. Aug. 14, 2009).  Accordingly, summary judgment is granted against the Plaintiffs on this, their final contention.

## I.  Plaintiffs' Motion for Leave to File a First Amended Complaint

Plaintiffs have moved to amend their Complaint on three grounds.  First, they seek to abandon their claim that the Defendant violated 15 U.S.C. § 1692g(a) in failing to provide sufficient notice to Plaintiffs of their rights under the FDCPA.[4]  Second, Plaintiffs "wish to

---

[4]  *See supra* note 2.

further clarify the basis of their causes of action relating to the false, deceptive and/or misleading representations made in Defendant's March 30, 2010 letter to Plaintiffs and Defendant's false representations of the amount of the alleged debt in said matter." Pls.' Mem. in Supp. at 1, ECF No. 14-1. Finally, Plaintiffs request leave to amend in order to add Richard Drury, the author of the March 30 Letter, as a defendant.

As this Court has repeatedly noted, futility of amendment is a sufficient reason for denying a request for leave to amend. *See, e.g., Reid v. Wells Fargo Home Mortg.*, No. RDB-10-1853, 2011 WL 4072143, at *7 (D. Md. Sept. 12, 2011) (citing, *inter alia*, *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Here, amendment would indeed be futile. In their proposed amended complaint, Plaintiffs assert no new information regarding their allegations, but instead restate their contention that the Defendant's demand for payment within thirty days conflicts with the FDCPA's notice of rights provision, and therefore is misleading. *See* Proposed Am. Compl. ¶ 9, ECF No. 14-3. This Court has already rejected this contention, and nothing in the proposed amended complaint would change this Court's analysis. Finally, Plaintiffs' desire to drop an allegation and add a defendant does nothing to support their legally insufficient claims. In sum, because amendment of their complaint would be futile, Plaintiffs' motion is DENED.

## CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Leave to File a First Amended Complaint (ECF No. 14) is DENIED, and Defendant's Motion for Summary Judgment (ECF No. 8) is GRANTED.


    A separate Order follows.




Dated:  September 23, 2011

                                        /s/_____
                                              Richard D. Bennett
                                            United States District Judge